AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Samsung Phone (Gray with Pink Case)<br>Model: Galaxy A12<br>With no other identifying numbers or features | )<br>)<br>)  Case No.  22MJ8843<br>)<br>)<br>) |

**FILED**

12/23/2022

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY      vyc                  DEPUTY

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A-1, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☐ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 USC 1324 | Transportation of Illegal Aliens |

The application is based on these facts:

See Attached Affidavit of Border Patrol Agent Moncerad Soto incorporated herein by reference.

- ☐ Continued on the attached sheet.
- ☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
  18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Border Patrol Agent Moncerad Soto
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date: _____ 12/23/2022 _____

_____
*Judge's signature*

City and state:  El Centro, California

HON. LUPE RODRIGUEZ, JR.,U.S. MAGISTRATE JUDGE
*Printed name and title*

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**          Samsung Phone (Gray with Pink Case)
Model: Galaxy A12
With no other identifying numbers or features
Seized from Kimberly Noemi CORTEZ-Ochoa
**(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1, A-2, A-3 and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 30, 2022, up to and including November 30, 2022, and is limited to the following:

a.  tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.  tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.  tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.  tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.  tending to identify the user of, or persons with control over or access to, the Target Devices;

f.  tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## **AFFIDAVIT**

I, Moncerad Soto, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

### **INTRODUCTION**

1.     I submit this affidavit in support of an application for warrant(s) to search the following electronic device(s):

**A-1:**          Samsung Phone (Gray with Pink Case)
               Model: Galaxy A12
               With no other identifying numbers or features
               Seized from Kimberly Noemi CORTEZ-Ochoa
               **(Target Device #1)**

**A-2:**          Motorola Phone (Black)
               Model: Moto C
               With no other identifying numbers or features
               Seized from Material Witness Oliverio SORIANO-Cortes
               **(Target Device #2)**

**A-3:**          Samsung Phone (Gray)
               Model: Galaxy A14
               With no other identifying numbers or features
               Seized from Material Witness Jesus CRUZ-Limon
               **(Target Device #3)**

**A-4:**          Samsung Phone (Black)
               Model: A01 Core
               With no other identifying numbers or features
               Seized from Material Witness Israel BONOLA-Uraga
               **(Target Device #4) (collectively "Target Devices")**

as further described in Attachments A-1, A-2, A-3 and A-4, and to seize evidence of a crime, specifically, violations of Title 8, United States Code, Section 1324 (Alien Smuggling), as further described in Attachment B. The requested warrant relates to the investigation and prosecution of Nicholas RAMIRO-Cardenas and Kimberly Noemi CORTEZ-Ochoa for transportation of illegal aliens Oliverio SORIANO-Cortes, Jesus

1

CRUZ-Limon and Israel BONOLA-Uraga (collectively, "the Material Witnesses") in violation of Title 8 U.S.C. § 1324 within the Southern District of California. The Target Devices were seized from Kimberly Noemi CORTEZ-Ochoa and the Material Witnesses on or about November 29, 2022, incident to their arrest. The Target Devices are currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

3.    Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I, or others, have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

**EXPERIENCE AND TRAINING**

4.    I am a United States Border Patrol Agent with the Department of Homeland Security, Customs and Border Protection, United States Border Patrol ("USBP"). I have been employed as a full-time, sworn federal BPA with the USBP since February 2016, and graduated from the USBP Basic Border Patrol Training Academy located in Artesia, New Mexico. The 20-week Academy curriculum covers specialized training in the Immigration and Naturalization Act, criminal law, and statutory authority, as well as cross-training in Title 21, United States Code, Controlled Substances law, and in Title 19, United States Code, Customs law.

5.    I am currently assigned to the El Centro Sector Prosecutions Unit. The El Centro Sector Prosecutions Unit is tasked with the responsibility of investigating and prosecuting alien smuggling organizations that utilize the Southern and Central Districts of California as an operational corridor. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of

undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6.     Through the course of my training, investigations, and conversations with other law enforcement personnel, I have gained a working knowledge of the operational habits of alien smugglers and alien transporters, in particular those who attempt to smuggle aliens into the United States from Mexico and transport them throughout the Southern District of California.  I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities.  Because they are mobile, the use of cellular telephones permits alien smugglers and transporters to easily carry out various tasks related to their smuggling activities, including, *e.g.*, remotely monitoring the progress of the aliens while the aliens are in transit, providing instructions to transporters, guiding aliens to specific pick up locations, warning accomplices about law enforcement activity in the area and the status of check-point operations, and communicating with co-conspirators who guide aliens, coordinate drop off locations, and/or operate alien stash houses.

7.     The smuggling of aliens generates many types of evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens.  For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors.  Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to

make smuggling arrangements, receive instructions, and report their locations after crossing.

8.      Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I know that cellular telephones (including their Subscriber Identity Module (SIM) card(s) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. In particular, in my experience and consultation with law enforcement officers experienced in alien smuggling investigations, I am aware that individuals engaged in alien smuggling may store photos and videos on their cell phones that reflect or show co-conspirators and associates engaged in alien smuggling, as well as images and videos with geo-location data identifying alien smuggling transportation routes, and communications to and from recruiters and organizers.

9.      This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones may yield evidence:

    a.    tending to indicate efforts to smuggle aliens from Mexico into the United States;

    b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate alien smuggling and transportation of smuggled aliens;

    c.    tending to identify co-conspirators, criminal associates, or others involved in alien smuggling, or transportation of smuggled aliens;

    d.    tending to identify travel to or presence at locations involved in the smuggling, transportation, or harboring of illegal aliens, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the Target Device(s); and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

10.    On November 29, 2022, Border Patrol Agents assigned to the El Centro Sector Field Intelligence Team (FIT) were conducting surveillance in Calexico, California. At approximately 3:21 p.m., FIT Agents were conducting mobile surveillance on a blue Buick Park Avenue (Buick) bearing Arizona license plates. This Buick has been identified by FIT Agents since November 15, 2022 as a vehicle possibly involved in an alien smuggling scheme based on prior observations. On November 29, 2022, FIT Agents kept constant visual on the Buick as it travelled westbound on Interstate 8 towards the Highway 98 Exit. As the Buick exited Interstate 8, it travelled northbound towards Old Highway 80 and parked. After the Buick parked in this area, FIT Agents set up a perimeter and kept visual surveillance on the area in anticipation that the Buick would travel back to Interstate 8 and pick up undocumented aliens on the side of Interstate 8.

11.    While observing the area and waiting for the Buick to leave the area, RVSS broadcasted over a secured radio frequency that they observed six individuals swimming across the All-American Canal, approximately one mile west of the Brock Research Center Road Exit. In this area, the All-American Canal is approximately one-half mile north of the United States/Mexico International Boundary Fence. After RVSS operators broadcasted their observation, FIT Agents remained parked in the area. The RVSS operators kept constant visual on the group of suspected undocumented aliens as they exited the All-American Canal and travelled north towards Interstate 8. The RVSS operator continued to watch the suspected undocumented aliens as they ran, hid in bushes, low-crawled and utilized crevices and low points to continue travelling north towards Interstate 8. While the suspected illegal aliens were walking towards Interstate 8, BPA M. Clinton travelled towards Old Highway 80 and observed that the Buick was no longer parked there.

At this time, RVSS operators notified Agents that the group of suspected undocumented aliens was approximately one hundred yards south of Interstate 8.

12. As RVSS operators broadcasted that information, BPA M. Clinton was on Highway 98, just west of the Highway 98/Interstate 8 junction. BPA Clinton observed the Buick pass him and enter Interstate 8 going eastbound. BPA Clinton broadcasted his observations over the radio and merged onto the eastbound lanes of Interstate 8 before he began travelling towards the Brocks Research Center Road Exit. As BPA M. Clinton approached the "Brocks Research Center Road 1 Mile" sign, he observed the Buick parked on the side of Interstate 8. As BPA M. Clinton passed the Buick, RVSS operators informed Agents that the group of suspected undocumented aliens were running towards the Buick and BPA C. Toledo observed the six suspected undocumented aliens run to the Buick and get in. Both BPA C. Toledo and RVSS operators watched as the suspected undocumented aliens got into the Buick and the Buick merged back onto the eastbound lanes of Interstate 8 and began travelling eastbound towards Yuma, Arizona.

13. As the Buick continued travelling eastbound Yuma, Arizona, FIT Agents positioned their unmarked service vehicle behind the Buick and kept constant visual on the Buick. While the Buick continued travelling eastbound, FIT Agents requested a fully marked Border Patrol service vehicle to initiate a vehicle stop on the Buick in order to perform an immigration inspection on all occupants inside. Anticipating the driver may flee if interdiction was attempted, FIT Agents and Calexico Border Patrol Agents set up Vehicle Immobilization Devices (VID) east of the Greys Well Exit at the A7 Bridge.

14. As the Buick approached the rest area located just west of the Greys Well Exit, BPA J. Bourque positioned his fully marked service vehicle behind the Buick and activated the emergency lights and sirens of his service vehicle, in an attempt to conduct a vehicle stop on the Buick and perform an immigration inspection on the six individuals that were observed entering the Buick. As BPA J. Bourque continued to pursue the Buick with the emergency lights and sirens activated, it became evident that the Buick was failing

1  to yield as the Buick increased its speed. BPA R. Alfaro was also in a marked service
2  vehicle and activated his lights and sirens as the secondary pursuit vehicle.

3      15.    The Buick continued to evade BPA J. Bourque as well as the additional FIT
4  Agents and failed to yield to the lights and sirens. As the Buick continued travelling
5  eastbound on Interstate 8, BPA C. Pluim and BPA G. Castaneda positioned themselves on
6  the side of Interstate 8 approximately one mile east of the Greys Well Exit at the A7 Bridge.
7  BPA C. Pluim and BPA G. Castaneda notified Agents that they would be in position with
8  a VID. As the Buick approached the area, BPAs deployed their VID and all four tires were
9  successfully immobilized. Agents were notified of the successful spike via service radio.

10     16.    After successfully immobilizing the tires of the Buick, the Buick slowed down
11 and came to a complete stop. BPA R. Alfaro and BPA J. Bourque approached the Buick in
12 Border Patrol rough duty uniforms, with Border Patrol marking and insignia fully visible.
13 Simultaneously, BPA M. Clinton and BPA C. Toledo approached the Buick with Border
14 Patrol markings and insignia fully visible. Agents ordered the driver, later identified as
15 CARDENAS, out of the vehicle. CARDENAS refused to exit the Buick and continued to
16 argue with and questions the Agents as to why he had to exit the vehicle. CARDENAS was
17 then extracted from the Buick, however, continued to resist being secured in handcuffs by
18 tensing his body tightly and utilizing his body weight to push his shoulders against Agents
19 and pull his body away from Agents. CARDENAS was tightly securing his arms and hands
20 in the area of his abdomen in a bent over position, not allowing access to his hands as he
21 used his body to shield them. Agents took CARDENAS to the ground as he continued to
22 secure his hands. During the struggle, as CARDENAS continued to actively attempt to
23 break free from the grasp of the Agents on scene, BPAs attempted to gain control of
24 CARDENAS. As CARDENAS laid on top of BPA C. Toledo, CARDENAS released his
25 hands from his abdomen and was eventually safely secured in handcuffs.

26     17.    After CARDENAS was secured, he was questioned as to his citizenship and
27 stated he was a United States Citizen from Chicago. Agents identified themselves as Border
28 Patrol Agents to the front seat passenger, later identified as CORTEZ, and questioned her

1   as to her citizenship and CORTEZ stated she was a United States Citizen. (Record checks
2   later revealed CORTEZ was not a United States citizen but has Lawful Permanent Resident
3   status in the United States.

4         18.    Agents then identified themselves as Border Patrol Agents to the six
5   passengers in the backseat and questioned them as to their citizenship. The six passengers,
6   later identified as: Oliverio SORIANO-Cortes, Jesus CRUZ-Limon, Israel BONOLA-
7   Uraga, Juana AVALOS-Tinoco, Jose Napoleon HERNANDEZ-Duran and Concepcion
8   Lisette RIVERA-Alvarez, admitted to being in the United States illegally. CARDENAS,
9   CORTEZ and the six passengers were placed under arrest and were transported to the El
10  Centro Border Patrol Station for further processing.

11        19.    At the Calexico Border Patrol Station, CORTEZ was advised of her Miranda
12  Rights as per DHS Form I-214. CORTEZ stated she understood her rights and was willing
13  to provide a statement without an attorney present. CORTEZ stated she and her boyfriend
14  (CORTEZ) were out for a drive when they noticed a group of people run out to the road
15  and ask for help. The group told them they were being followed and were hungry. CORTEZ
16  stated she did not know the group of individuals were illegal and they were just giving
17  them a ride to the first gas station on their way.

18        20.    Material Witness Oliverio Jose SORIANO-Cortes stated he is a citizen of
19  Mexico. SORIANO stated he is not in possession of a document that would allow him to
20  enter, work or remain in the United States. SORIANO stated he was traveling to New York
21  to work. SORIANO stated his family members made smuggling arrangements with a male
22  subject and he did not know what the smuggling fees were due to his family making the
23  arrangements. After making an illegal entry into the United States, SORIANO was
24  instructed to walk to the paved road after getting through the canal and he got into a black
25  sedan pulling over near their location. SORIANO stated there was a male driver and a
26  female front passenger in the vehicle. As they travelled in the sedan, SORIANO stated the
27  driver nor passenger spoke to them while in the vehicle. SORIANO was shown a
28  photographic lineup but was unable to identify anyone.

21.   Material Witness Jesus Isaac CRUZ-Limon stated he is a citizen of Mexico and is not in possession of any documents that would allow him to enter, work or remain in the United States. CRUZ stated he was traveling to Yuma, to work. CRUZ stated he made smuggling arrangements with a male subject and would pay $8,000.USD to be smuggled into the United States. After making an illegal entry, CRUZ walked to the paved road and got into the Buick after the female passenger opened the rear passenger door for them, allowing them to enter the vehicle. As they travelled in the Buick, CRUZ stated the driver noticed they were being pulled over but continued driving until the vehicle's tires were punctured by Agent's spikes. CRUZ was shown a photographic lineup and identified photo #5 (CARDENAS) from the photo lineup 378A as the driver of the load vehicle. CRUZ identified photo #1 (CORTES) from the photo lineup 378B as the front passenger of the load vehicle.

22.   Material Witness Israel Jorge BONOLA-Uraga stated he is a citizen of Mexico and is not in possession of any documents that would allow him to enter, work or remain in the United States. BONOLA stated he was traveling to New York to work. BONOLA stated this is his third attempt entering the United States illegally and he made smuggling arrangements with a male subject while in Mexicali but could not provide a name or moniker for the smuggler. BONOLA arranged to pay $10,300 USD to be smuggled into the U.S. BONOLA was instructed to make an illegal entry and walk to a nearby road. BONOLA stated they waited for a minute before a dark sedan pulled over near their location and they got in. As they travelled in the sedan, BONOLA stated the driver nor passenger spoke to them while in the vehicle. BONOLA was shown a photographic lineup and identified photo #5 (CARDENAS) as the driver of the load vehicle. BONOLA was unable to identify anyone from photo lineup 378B.

23.   In a search incident to arrest, Border Patrol Agents found and seized Target Device #1, a gray Samsung cell phone with a pink case, from CORTEZ's person. Border Patrol Agents found and seized Target Device #2, black Motorola cell phone, from SORIANO's person.   Border Patrol Agents found and seized Target Device #3, a gray

1  Samsung cell phone from CRUZ's person. Border Patrol Agents found and seized Target
2  Device #4, one black Samsung cell phone, from BONOLA's person.

3      24.    Based upon my experience and investigation in this case, I believe that
4  CORTEZ and the Material Witnesses, and other persons, as yet unknown, were involved
5  in an alien smuggling venture and that CORTEZ and the Material Witnesses used the
6  Target Devices to coordinate with the as yet unknown persons to bring the aliens into the
7  United States and/or transport them further into the United States.  Additionally, I believe
8  that recent calls made and received, telephone numbers, contact names, electronic mail (e-
9  mail) addresses, appointment dates, text messages, pictures, and other digital information
10 are stored in the memory of the Target Devices, which may identify other persons involved
11 in alien smuggling activities.

12     25.    I am aware that smuggling conspiracies require planning to successfully evade
13 detection by law enforcement.  In my professional training and experience, this may require
14 planning and coordination in the days and weeks prior to the event.  Additionally, co-
15 conspirators are often unaware of the subject's arrest and will continue to attempt to
16 communicate with the subject after the arrest to determine their whereabouts.  Given this,
17 I respectfully request permission to search the Target Devices for data beginning on
18 September 30, 2022, up to and including November 30, 2022, the day after the arrest of
19 CORTEZ and the Material Witnesses.

20                                    **METHODOLOGY**

21     26.    It is not possible to determine merely by knowing the cellular telephone's
22 make, model and serial number, the nature and types of services to which the device is
23 subscribed and the nature of the data stored on the device.  Cellular devices today can be
24 simple cellular telephones and text message devices, can include cameras, can serve as
25 personal digital assistants and have functions such as calendars and full address books, and
26 can be mini-computers allowing for electronic mail services, web services, and
27 rudimentary word processing.  An increasing number of cellular service providers now
28 allow for their subscribers to access their device over the internet and remotely destroy all

1  of the data contained on the device.  For that reason, the device may only be powered in a
2  secure environment or, if possible, started in "flight mode," which disables access to the
3  network.  Unlike typical computers, many cellular telephones do not have hard drives or
4  hard drive equivalents and, instead, store information in volatile memory within the device
5  or in memory cards inserted into the device.  Current technology provides some solutions
6  for acquiring some of the data stored in some cellular telephone models using forensic
7  hardware and software.  Even if some of the stored information on the device may be
8  acquired forensically, not all of the data subject to seizure may be so acquired.  For devices
9  that are not subject to forensic data acquisition or that have potentially relevant data stored
10  that is not subject to such acquisition, the examiner must inspect the device manually and
11  record the process and the results using digital photography.  This process is time and labor
12  intensive and may take weeks or longer.

13      27.    Following the issuance of this warrant, a case agent familiar with the
14  investigation will collect the Target Devices and subject them to analysis. All forensic
15  analysis of the data contained within the telephones, and their memory cards will employ
16  search protocols directed exclusively to the identification and extraction of data within the
17  scope of this warrant.

18      28.    Based on the foregoing, identifying and extracting data subject to seizure
19  pursuant to this warrant may require a range of data analysis techniques, including manual
20  review, and, consequently, may take weeks or months.  The personnel conducting the
21  identification and extraction of data will complete the analysis within ninety (90) days of
22  the date the warrant is signed, absent further application to this Court.

23      / /
24      / /
25      / /
26      / /
27      / /
28      / /

**CONCLUSION**

29.    Based on all of the facts and circumstances described above, I believe that probable cause exists to conclude that CORTEZ and the Material Witnesses used the Target Devices to facilitate the offense of alien smuggling. The Target Devices were likely used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by RAMIRO-Cardenas, CORTEZ, the Material Witnesses, and others continues to exist on the Target Devices. Therefore, I respectfully request that the Court issue this warrant.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Moncerad Soto, Border Patrol Agent
United States Border Patrol

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone on this 23rd day of December, 2022.

1:46 p.m.
_____
HON. LUPE RODRIGUEZ, JR.
UNITED STATES MAGISTRATE JUDGE

12

**ATTACHMENT A-1**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-1:**    Samsung Phone (Gray with Pink Case)
Model: Galaxy A12
With no other identifying numbers or features
Seized from Kimberly Noemi CORTEZ-Ochoa
**(Target Device #1)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-2
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-2:**  Motorola Phone (Black)
Model: Moto C
With no other identifying numbers or features
Seized from Material Witness Oliverio SORIANO-Cortes
**(Target Device #2)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## **ATTACHMENT A-3**
PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-3:**     Samsung Phone (Gray)
Model: Galaxy A14
With no other identifying numbers or features
Seized from Material Witness Jesus CRUZ-Limon
**(Target Device #3)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT A-4
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**A-4:**           Samsung Phone (Black)
              Model: A01 Core
              With no other identifying numbers or features
              Seized from Material Witness Israel BONOLA-Uraga
              **(Target Device #4)**



The **Target Device** is currently in the possession of the Department of Homeland Security, El Centro Border Patrol Sector Asset Forfeiture Office, 211 West Aten Road, Imperial, California 92251, and located in the evidence room of that office.

## ATTACHMENT B

### ITEMS TO BE SEIZED

Authorization to search the mobile telephone described in Attachments A-1, A-2, A-3 and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the Target Devices for evidence described below.

The evidence to be seized from the mobile telephone will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of October 30, 2022, up to and including November 30, 2022, and is limited to the following:

a.   tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b.   tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c.   tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d.   tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e.   tending to identify the user of, or persons with control over or access to, the Target Devices;

f.   tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which is evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

.